**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**JUSTIN ANDERSON**                                                **PETITIONER**

**VS.**                  **CASE NO.: 5:12CV00280 DPM/BD**

**RAY HOBBS, Director,
Arkansas Department of Correction**            **RESPONDENT**

**<u>RECOMMENDED DISPOSITION</u>**

**I**.     **<u>Procedure for Filing Objections</u>**

      The following Recommended Disposition ("Recommendation") has been sent to

United States District Court Judge D.P. Marshall Jr. Mr. Anderson – or any party – may

file written objections to this Recommendation.

      Objections must be specific and must include the factual or legal basis for the

objection. An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

      An original and one copy of objections must be received in the office of the United

States District Court Clerk within fourteen (14) days of this Recommendation. A copy

will be furnished to the opposing party.

      If no objections are filed, Judge Marshall can adopt this Recommendation without

independently reviewing all of the evidence in the record. By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    **Background**

On October 2, 2000, Petitioner Justin Anderson broke into a home in Lewisville, Arkansas, and stole two guns.[1]  Four days later, on October 6, 2000, he entered the cab of Roger Solvey's tractor-trailer.[2]  According to Mr. Anderson's own statements, he found Mr. Solvey in the sleeper and fired multiple shots at him.  Mr. Solvey was wounded, but survived.  The Solvey shooting led to the conviction at issue in this habeas corpus petition, that is, Mr. Anderson's conviction for attempted capital murder.

Mr. Anderson shot a second victim six days later, on October 12, 2000.  He was walking in Lewisville when he saw eighty-five-year-old Clara Creech working in her garden.[3]  After the Creech shooting, Mr. Anderson told police that he did not know Ms. Creech, but shot her anyway.  She died of the gunshot wounds Mr. Anderson inflicted.

---

[1] Unless noted otherwise, the recited facts are from the decision in *Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006).

[2] Mr. Anderson lists either the date of this incident, or the date of his statement to police about this incident, as October 9, 1999.  (Docket entry #1-1, ¶6)  This appears to be a typographical error.

[3] In a separate decision by the Arkansas Supreme court, the court stated that Ms. Creech was eighty-seven years old when she was murdered.  *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004).  Her precise age at the time she was killed is not material to this decision.

2

Ms. Creech's murder led to Mr. Anderson's capital murder conviction and death sentence. That conviction and sentence are the subject of a separate habeas proceeding pending in this district. *Anderson v. Hobbs*, 5:12CV00279-DPM (E.D.Ark. filed July 24, 2012). The two habeas corpus petitions are factually related, as explained below, but are legally distinct.

Mr. Anderson emerged as a suspect in the Creech murder before police connected him to the Solvey shooting, even though the Solvey shooting occurred first. Shortly after Ms. Creech was murdered on October 12, 2000,[4] at around 2:30 p.m., police officers contacted Mr. Anderson at the residence of Harriet Conner, where he was living. (Docket entry #1-1, ¶7) Ms. Conner consented to a police search of her home. (#1-1, ¶95.k.) Police took Mr. Anderson to the Lewisville Jail and placed him in an interrogation room where he "chatted" with an officer for about three hours.[5] (#1-1, ¶127)

Later that afternoon, at about 5:50 p.m., Mr. Anderson signed a Miranda waiver. (#1-1, ¶131) In this habeas corpus petition, he alleges that "[o]ver many hours of intense investigation," he persistently denied involvement in the Creech murder. At 1:48 on the morning of October 13th, however, Mr. Anderson admitted that he had shot Ms. Creech

---

[4] Mr. Anderson claims this all occurred in 1999. (#1-1, ¶6) It appears clear that this is a typographical error.

[5] Mr. Anderson raises an issue as to whether he was in custody at this point. According to Sergeant Jeff Jester of the Arkansas State Police, Mr. Anderson was advised that he was free to leave, that he was not under arrest, and that the police wanted him to accompany them downtown to answer some questions. *Anderson*, 357 Ark. at 192-193.

in the back.  (#1-1, ¶125, ¶130)  He now says that he confessed to the Creech murder only after police brought him to see his brother who, according to Mr. Anderson, was hysterical after having been badly beaten by the police.  (#1-1, ¶15)

After confessing to the Creech murder, Mr. Anderson took investigators to the Masonic Lodge in Lewisville where he had hidden the gun used in the Creech murder. *Anderson*, 357 Ark. at 193.  Upon returning to the jail, Mr. Anderson gave a second statement to investigators at 2:26 a.m.  In that statement, Mr. Anderson admitted that he had shot Mr. Solvey.  (#1-1, ¶125)  *Id.*  He also confessed to breaking into a home a few weeks earlier and stealing the two guns he used to shoot Mr. Solvey and Ms. Creech.  *Id.* The entire police interrogation lasted approximately six hours, with two or three breaks. *Id.* at 192.

Mr. Anderson was tried first for the Solvey shooting.  On December 6, 2001, a jury in the Circuit Court of Lafayette County, Arkansas, found Mr. Anderson guilty of attempted-capital murder ("attempted murder") for this shooting.  (#1-1, ¶2)  He was sentenced to a fifty-year term of imprisonment in the Arkansas Department of Correction as a habitual offender.[6]

Mr. Anderson appealed, but the Arkansas Court of Appeals affirmed the attempted-murder conviction and sentence on February 26, 2003.  *Anderson v. State*,

---

[6] On January 31, 2002, after a separate jury trial, Mr. Anderson was found guilty of capital murder for killing Ms. Creech.  He was sentenced to death for that crime. *Anderson v. Hobbs*, 5:12CV00279-DPM, docket entry #1, ¶1 (E.D.Ark. filed July 24, 2012).

2003 WL 549121 (Ark.App., Feb. 26, 2003).  Mr. Anderson requested a rehearing and also a review by the Supreme Court of Arkansas.  Both requests were denied, and the mandate was issued on April 24, 2003.  Mr. Anderson did not petition the Supreme Court of the United States for certiorari; nor did he file any state petitions for post-conviction relief with respect to the Solvey conviction.[7]  (#1-1, ¶3)

On July 24, 2012, Mr. Anderson filed the pending petition for writ of habeas corpus.  (#1-1)  In the petition, he alleges a number of constitutional deficiencies in his attempted-murder trial.  (#1-1)  Respondent, Director Ray Hobbs, contends that the petition is time-barred and that the claims are procedurally defaulted.  (#13)

Mr. Anderson has filed a traverse addressing Director Hobbs's statute of limitations argument.  (#17)  Director Hobbs, in turn, has filed a response to the traverse. (#21)  For the reasons explained below, the Court will recommend that Judge Marshall DISMISS Mr. Anderson's petition, with prejudice.

## III.   **Discussion**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitations period for a state prisoner to commence a habeas corpus proceeding under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d)(1).  The limitations period

---

[7] As explained more fully below, Mr. Anderson did file postconviction petitions after his capital-murder conviction for killing Ms. Creech.

5

begins to run from, "the date on which the judgement became final by the conclusion of direct review or the expiration of the time limit for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

In cases such as this, where the petitioner has not sought direct review in the United States Supreme Court, the judgment is deemed final at the expiration of the time allowed to seek Supreme Court review – that is, ninety days after the conclusion of the petitioner's direct appeals in the state system.  *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (citations omitted).

In this case, the one-year limitations period began to run no later than July 24, 2003, the date Mr. Anderson's time to seek review in the Supreme Court of the United States expired.  He waited to file the pending petition until July 24, 2012 – a full nine years after his conviction became final.  Thus, his claims are barred by the one-year statute of limitations unless the limitations period can be tolled.

A.    *Statutory Tolling*

The time during which a properly filed application for State post-conviction or other collateral review is pending does not count toward the limitations period.  28 U.S.C. § 2244(d)(2).  Mr. Anderson, however, never filed any post-conviction petitions concerning his attempted-murder conviction in State court.  (#1-1, ¶ 3)  Thus, he is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2).

In some circumstances, the one-year limitations period does not begin to run until the constitutional right asserted was initially recognized by the Supreme Court.  28 U.S.C.

6

§ 2244(d)(1)(C).  That exception, however, does not aid Mr. Anderson's cause.  He does not cite any Supreme Court cases in his petition, either old or new, and the Court is not aware of any recent decision that would open the door to statutory tolling in this case. (#1-1)  Mr. Anderson does cite a number of Supreme Court cases in his traverse, but he has not identified any newly recognized constitutional right that would toll the statute of limitations.  (#17)  Thus, the newly recognized right exception does not apply to Mr. Anderson's attempted-murder conviction.

Mr. Anderson argues that he was entitled to counsel to assist in pursuing post-conviction remedies and that his lack of counsel supports a finding of statutory tolling. The Supreme Court recognized a Sixth Amendment right to effective assistance of counsel in criminal proceedings decades ago.  See *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441 (1970) ("defendants facing felony charges are entitled to the effective assistance of competent counsel"); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963) (defendant pleading guilty to felony charge has a federal right to assistance of counsel); *Reece v. Georgia*, 350 U.S. 85, 90, 76 S.Ct. 167 (1955) (the right to counsel is the right to effective assistance of counsel).  There is no constitutional right, however, to effective assistance of counsel in collateral, post-conviction state-court proceedings. *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009)(citing *Coleman v. Thompson*, 501 U.S. 722, 754, 111 S.Ct. 2546 (1991)).  While ineffective assistance of counsel at "initial-review" post-conviction proceedings can establish cause for a petitioner's *procedural default* of a claim of ineffective assistance at trial, *Martinez v. Ryan*, __ U.S.

7

__, 132 S.Ct. 1309, 1315 (2012), that safety valve does not help Mr. Anderson clear the statute-of-limitations hurdle.  His right-to-counsel argument is contrary to settled law.

Mr. Anderson also argues that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(D).  (#17, ¶¶16-17)  Under that provision, the limitations period begins to run from the date on which the factual predicate of a claim could have been discovered. A petitioner must exercise due diligence, however, to discover those predicate facts. Otherwise, this exception does not apply.  *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009).  All of the factual predicates to the claims Mr. Anderson raises in this habeas corpus petition could have been discovered with some level of diligence at the conclusion of direct review.

Mr. Anderson argues that, because he was in custody and lacked counsel, he could not effectively investigate post-conviction claims; could not collect the necessary records; and could not review files and assessments.  (#17, ¶17)  Clearly, perfecting post-conviction claims is more difficult for those in custody and for those without counsel. But Mr. Anderson's situation was hardly unique.  Virtually every convicted person shares that same dilemma –"in custody and bereft of the assistance of counsel."  (#17, ¶17)  His circumstances no doubt contributed to his lack of diligence, but they are legally insufficient to trigger statutory tolling.

The Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions."  *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987)(citations omitted); see also

*Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012)(declining to decide whether an exception exists when the collateral proceeding provides the first opportunity to raise a claim of ineffective assistance at trial). More importantly, Mr. Anderson has not identified a factual predicate of his claims that was not previously discoverable. (#1-1, #17) This provision relates to the discovery of vital facts underlying the claims, not to the ability to present the claims.

Based on the undisputed facts, Mr. Anderson is not entitled to statutory tolling. His claims are barred unless they can be saved by equitable tolling.

B. *Equitable Tolling*

The statute of limitations set out in 28 U.S.C. § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A petitioner invoking equitable tolling, however, bears the burden of showing that he has been pursuing his rights diligently, but that some extraordinary circumstance stood in the way of a timely filing. *Id*. at 2562 (citing *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)). While equitable tolling is a recognized exception to the one-year limitations period, it affords an "exceedingly narrow window of relief." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001).

Mr. Anderson argues that equitable tolling should apply because his attempted-murder conviction was an "integral and significant" part of his separate capital-murder conviction. (#17, ¶2) At first blush, two issues appear to overlap in Mr. Anderson's attempted-murder habeas petition and his capital-murder petition. In both petitions he

alludes to his mental competence and to the fact that both of his confessions occurred during the same six-hour interrogation.  The seeming inter-connection unravels, however, upon closer inspection.

Not only did Mr. Anderson commit the two crimes against separate, unrelated victims on different dates, but also, the convictions resulted from separate trials before different juries; they involved separate appeals; and have profoundly different post-conviction histories.  The Court must determine whether each petition was brought within the statute of limitations applicable to that conviction, and one petition cannot ride the procedural coat-tails of the other.  Likewise, each petition must be examined separately to determine whether there is an exception to the applicable limitations.  The Court cannot reach the merits of the Mr. Anderson's claims in the attempted-murder case unless he can clear the statute of limitations hurdle for that conviction.

In support of his equitable tolling argument, Mr. Anderson again raises his lack of post-conviction counsel and faults the State of Arkansas for failing to provide counsel for him after his conviction.  (#17, ¶¶4-7)  He argues that the state's failure to appoint counsel violated his Sixth Amendment right to counsel (even though he never moved for appointment of counsel).  (#1-1, ¶¶135-139)  A holding that indigent persons are entitled to equitable tolling based on a lack of counsel in post-conviction proceedings would require states to appoint post-conviction counsel for every indigent felon or, in effect, waive its statute of limitations defense.  As discussed, that is not currently the law.

Finally, Mr. Anderson argues that he is entitled to equitable tolling due to his mental health issues.  (#17, ¶¶8-13)  The issue of Mr. Anderson's mental capacity was litigated during his capital-murder trial that occurred less than two months after his attempted-murder conviction.  He lost that argument before the trial court and on direct appeal.  *Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783, 789-90 (2011)(death penalty case).

Mr. Anderson had already raised lack of mental capacity in his attempted-murder case – also without success.  *Anderson v. State*, 2003 WL 549121 (Ark.App., Feb. 26, 2003).  These factual findings are presumed correct.  *Wright v. Bowersox*, __ F.3d __, 2013 WL 3836247 (8th Cir. July 26, 2013)("A state court's competency determination is a factual finding and accordingly presumed to be correct in a federal habeas proceeding.").

In any event, the United States Supreme Court has never found mental incapacity to be an "extraordinary circumstance" for purposes of equitable tolling of the statute of limitations.  See *Lawrence v. Florida*, 549 U.S. 327, 337, 127 S. Ct. 1079, 1086 (2007) (declining to decide whether a petitioner's mental incapacity justified his reliance upon counsel and entitled him to equitable tolling).  Even if this Court were to find Mr. Anderson's mental condition to be an "extraordinary circumstance," he has failed to provide a basis for the Court to find that he diligently pursued his rights.  See *Earl*, 556 F.3d at 722 ("We will decline to apply the doctrine of equitable tolling if a habeas petitioner has not diligently pursued his rights.").

11

Mr. Anderson faults his counsel for his failure to pursue post-conviction remedies in his attempted-murder case.  The same attorney represented Mr. Anderson in the appeals of both the attempted-murder and capital-murder convictions.  (#17, ¶5)  Mr. Anderson complains that, after the Arkansas Court of Appeals affirmed his conviction for attempted murder in the Solvey shooting, his attorney "did not provide [him] with any information concerning state post-conviction proceedings for his attempted capital murder case," even though she was still representing him in the capital-murder matter.  (#17, ¶5)

Further, the record does not support his lack-of-information argument.  New counsel initiated post-conviction proceedings in Mr. Anderson's capital-murder conviction on October 11, 2007.  (#17, ¶6)  If nothing else had alerted Mr. Anderson to his right to pursue post-conviction relief, this filing should have made clear that his lawyer was not pursuing post-conviction relief in the attempted-murder case.  Yet Mr. Anderson waited almost five additional years after that time to file the instant petition.[8] This lack of diligence forecloses equitable tolling.  Even giving Mr. Anderson the benefit of every doubt, the time that elapsed from the date his conviction became final until he finally filed the pending petition renders this federal petition time-barred.

After faulting his appellate counsel for not providing information concerning post-conviction options in his attempted-murder conviction, Mr. Anderson inconsistently

---

[8] The Court also notes that habeas counsel was appointed on November 22, 2011, to represent Mr. Anderson in his federal habeas proceedings.  (#17, ¶4)  Even after appointment of counsel to pursue habeas relief, a full eight months elapsed before the filing of this petition.

states that he thought his appellate counsel *was* pursuing post-conviction relief for the attempted-murder conviction.  (#17, ¶7)  In any event, in the nine years between the conclusion of direct review of the attempted-murder conviction and the filing of the petition here, there is no evidence in the record showing that Mr. Anderson ever asked his appellate counsel about post-conviction proceedings in the attempted-murder case.

Whether Mr. Anderson was not informed or thought his lawyer was filing post-conviction papers, equitable tolling does not save the pending petition.  The law in this circuit is clear.  Pro se status, lack of legal knowledge or legal resources, and confusion about, or miscalculations of, the limitations period are inadequate grounds to warrant equitable tolling.  See *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004).

C.    *Actual Innocence*

The Supreme Court of the United States recently held that actual innocence, when proved, allows a petitioner to overcome expiration of the AEDPA's one-year limitations period.  *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928 (2013).  To make a threshold showing of actual innocence, however, a petitioner must show that, in light of new evidence, no reasonable jury would have found him guilty beyond a reasonable doubt.  *Id*. (citations omitted).  Even under *McQuiggin*, however, diligence and the timing of a petition are considerations in determining whether a petitioner has made a convincing showing of actual innocence.  *Id*. at 1936.

In this case, Mr. Anderson does not present an actual-innocence claim in either his petition or his traverse.  (#1-1, #17)  The closest he comes is arguing that, had counsel performed adequately, a jury could not have found that he acted with the culpable mental state necessary to support an attempted-capital-murder conviction.  Instead, he argues, the jury could have found him guilty of only the lesser-included offense of attempted first-degree murder.  (#17, ¶¶55-56)  Even if this is so, the assertion is a far cry from an assertion, much less a showing, of actual innocence.

Likewise, none of Mr. Anderson's other allegations: that the State psychologist was "grossly unreliable" (#1-1, ¶18); that his trial contained "gross errors" (#1-1, ¶20); that his lawyer failed to present an affirmative defense (#1-1, ¶23); that he was exposed to trauma (1-1, ¶¶24-34); and his assortment of mental health issues, go to the issue of actual innocence.  To be credible, a claim of actual innocence requires a petitioner to support his allegations with "reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995).  Mr. Anderson has not made this showing.

D.    *Evidentiary Hearing*

Mr. Anderson urges the Court to hold an evidentiary hearing to consider "significant issues."  (#17, ¶15, ¶17, ¶37, ¶54, ¶57, ¶78, ¶80)  He argues that he has been unable to discover the factual predicate of his claims so as to toll the limitations period.

(#17, ¶17)  He apparently seeks an evidentiary hearing so that he can develop the factual predicate.

Federal review is generally limited to the record that was before the state court that adjudicated the claim.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Evidentiary hearings in federal habeas proceedings are held only where a petitioner establishes that he was unable to develop the factual basis for a claim in state court despite diligent effort. *Williams v. Taylor*, 529 U.S. 420, 430, 120 S.Ct. 1479, 1487 (2000).  As discussed, Mr. Anderson has not shown that he diligently pursued his rights in state court or explained why he was unable to develop the factual basis for his current claim.

His request for a hearing places the cart before the horse.  That is, he demands a hearing before he has made the requisite showing as to why the Court should hold a hearing.  The Court cannot hold an evidentiary hearing unless Mr. Anderson first shows that a material factual predicate could not have been previously discovered.  28 U.S.C. § 2254(e)(2)(A)-(B).  He has offered no evidence in this case to support his request for a hearing.

Any new, additional, or supplemental evidence regarding Mr. Anderson's mental condition at this stage would be insufficient in any event because the evidence was not presented to the state court at the time of its decision.  This yet-to-be-produced evidence "would have no bearing on whether the state court's decision was based on an unreasonable determination of the facts because the [evidence] was not available for

15

consideration by the state court." *Wright v. Bowersox*, __ F.3d __, 2013 WL 3836247, *6

(8th Cir. July 26, 2013)(citing *Cullen*, 131 S.Ct. at 1398-1401).

Finally, Mr. Anderson argues he is entitled to an evidentiary hearing under the

recent Eighth Circuit decision in *Sasser v. Hobbs*, __ F.3d __, 2013 WL 6037159 (8th

Cir. Nov. 15, 2013).  (#24)  *Sasser* applied the Supreme Court's decision in *Trevino v.*

*Thaler*, 133 S.Ct. 1911 (2013) to Arkansas law and procedure.  *Sasser* might allow Mr.

Anderson to present evidence in an evidentiary hearing to overcome the procedural

default of his ineffective assistance of counsel claims.  *Id.* at 1919.  It is the statute of

limitations, however, and not procedural default that bars relief in this case.  Accordingly,

there is no basis for holding an evidentiary hearing based on the *Trevino* and *Sasser*

decisions.

## IV.   Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a

certificate of appealability.  Rule 11 of the Rules Governing Section 2254 Cases in the

United States District Court.  The Court can issue a certificate of appealability only if Mr.

Anderson has made a substantial showing of the denial of a constitutional right.  28

U.S.C. § 2253(c)(1)-(2).  Here, Mr. Anderson has not provided any basis for issuing a

certificate of appealability.

## V.   Conclusion

Mr. Anderson's petition is time-barred.  For that reason, the Court recommends

that Judge Marshall dismiss the pending petition for writ of habeas corpus, with

16

prejudice.  And because there is no substantial showing that Mr. Anderson was denied a

constitutional right, the Court should decline to issue a certificate of appealability.

DATED this 2nd day of December, 2013.


_____
UNITED STATES MAGISTRATE JUDGE